Paul MacArthur **HUNTER**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 21751.

United States Court of Appeals
Ninth Circuit.

April 17, 1968.

HAMLEY, Circuit Judge:

Paul MacArthur Hunter registered with his Selective Service System draft board at Yakima, Washington, and claimed exemption from both combatant and non-combatant training and service in the Armed Forces.[1] Hunter was nevertheless classified I-A and, although he exhausted his administrative remedies, the I-A classification was adhered to. He was thereafter accepted for induction on January 11, 1966, but refused to be inducted. Hunter was then charged, tried by the court without a jury, convicted and sentenced for such refusal, the same being an offense under the Universal Military Training and Service Act, 62 Stat. 622 (1948), 50 U.S.C.App. § 462 (a) (1964).

On this appeal from his conviction, Hunter's only contention is that the trial court erred in upholding the I-A classification because there is assertedly no rational basis in fact for that classification.

The I-A classification is factually unassailable unless the local board or the appeal board was required to find that Hunter was, at the time he requested a I-O classification, entitled thereto.[2] In order to be entitled to a I-O classification it was incumbent upon Hunter to establish that, by reason of religious training and belief, he was, at the time he requested such classification, opposed to participation in war in any form and conscientiously opposed to participation in both combatant and non-combatant training and service in the Armed Forces. See 32 C.F.R. § 1622.1(c).

Hunter represented to the board, in his special form for conscientious objectors and various other communications and personal appearances, that, by reason of religious training and belief, he had such a conscientious objection.

In support of this representation, Hunter stated, in his July 17, 1961 special form for conscientious objectors, that,

Allen B. Fortier (argued), Yakima, Wash., for appellant.

Michael J. Swofford (argued), Asst. U. S. Atty., Eugene Cushing, U. S. Atty., Seattle, Wash., for appellee.

Before HAMLEY and DUNIWAY, Circuit Judges, and ZIRPOLI, District Judge.

1. If allowed, this would have entitled him to a I-O classification. See 32 C.F.R. § 1622.14(a); Daniels v. United States, 9 Cir., 372 F.2d 407, 408, n. 1.

2. Entitlement to a I-O classification was the only ground upon which Hunter claimed to be exempt from induction.

since 1958, when he was fourteen or fifteen years old, he had been a member of Jehovah's Witnesses. He stated that he was also a member of the Watchtower Bible and Tract Society, which is connected with Jehovah's Witnesses, and the New World Society of Jehovah's Witnesses. Hunter told the board in this document that he had been baptized into the "ministry" of Jehovah's Witnesses and, in this capacity had gone "house to house" in 1959, placing magazines in the Yakima area. He also stated that he had irregularly attended meetings of Jehovah's Witnesses and had engaged in personal study of that organization's teachings.[3]

In this conscientious objector form, Hunter told the board that he had received his religious training through the organizations named above. He cited to the board what he regarded as the teachings of Jehovah's Witnesses in opposition to war in any form and indicated that he subscribed to those views. In his subsequent written and oral statements to the board and to a hearing officer of the Department of Justice, Hunter adhered, for the most part, to the representations described above. He did, however, agree with the hearing officer that, under the present system a nation must use force to protect itself; he stated that he did wrong to work in a defense plant; and he said he did very little reading. A member of the Southeast Unit of Jehovah's Witnesses, in Yakima, Washington, reported that Hunter's attendance at meetings of the organization was fair and that he was sincere in his claim.

A number of evidentiary items were brought to the attention of the board tending to show that, at the time Hunter requested a I-O classification, he was not an active member of Jehovah's Witnesses and that he was not sincere in his asserted conscientious objection.

The hearing officer reported, on the basis of Hunter's May 11, 1961 appearance before him, that defendant was not then familiar with the teachings of Jehovah's Witnesses, and that he referred only in general terms to the Bible. A member of the Southeast Unit of Jehovah's Witnesses in Yakima, Washington, stated that Hunter did not live up to his convictions. According to one of Hunter's references, Hunter had gone out on Jehovah's Witnesses' work only once to the knowledge of the reference, and had not been seen at a meeting for nine months. Another reference who had studied the religious beliefs of the Jehovah's Witnesses with Hunter in 1957 reported that Hunter had been inactive since 1959, and no longer attends meetings at Yakima. This reference expressed the view that Hunter was sincere but that he did not apply his sincerity to his religious work.

A number of references reported that Hunter was a good workman and kept out of trouble, but that he never mentioned his religion or military service. Hunter worked in a defense plant operated by Hobeck Precision Metals, Inc., Burbank, California, from January 1962, to at least July of that year. The Watchtower Bible and Tract Society, Brooklyn, New York, had no information concerning Hunter. A representative of a company which employed Hunter from April to July, 1959, expressed the belief that Hunter was afraid to go into military service because of insecurity brought on by the type of family he had been subjected to.

■ Since Hunter raises, on this appeal, only a factual question, the I-A classification given Hunter can be overturned only if it has no basis in fact. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428; Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567. Hunter urges that this means a "rational" basis of fact, and we suppose this is true since,

3. Hunter stated in his classification questionnaire, filed on July 6, 1961, that he had been a full time "minister" for four months in 1959, "and then I fell away from the church, that is I quit going until a few months ago, then I started again."

lacking rationality, the basis would hardly be factual.

Having in mind all of the factual materials in the record, the salient features of which are stated above, we hold that the determination that Hunter did not, at the time he was denied a I-O classification, have a sincere conscientious objection, by reason of religious training and belief, to participation in both combatant and non-combatant training and service in the Armed Forces, has a basis in fact and therefore the I-A classification must be sustained on this appeal.

Affirmed.